Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this Honorable Court. Good morning. Good morning, Your Honor. We're here to hear one appeal this morning, initially en banc in this expedited case of Jones versus the Governor of Florida. We will hear first from Mr. Cooper. Each side has an hour to speak. Mr. Cooper, I understand you have reserved 15 minutes for rebuttal. Yes, Your Honor. Please record. And we're going to allow you to speak for several minutes first before we start interrupting you with questions. Please feel free to begin. Thank you, Your Honor. I understand six minutes, but thank you, Chief Judge. And may it please the Court. Throughout its history, Florida has automatically and permanently disenfranchised voters upon conviction of a felony. The state needed no justification for this policy apart from the naked fact of the conviction. That is because the 14th Amendment expressly authorizes states to permanently disqualify felons from the electorate. But in 2018, the voters of Florida adopted Amendment 4, which provided a conditional means for automatically reenfranchising most felons. The condition placed by the voters on a felon's rejoining the body politic was simply that he complete all terms of sentence, all terms, carceral, supervisory, and financial. The voters decided that the right to vote of a person who lost it as a consequence of his conviction of a felony should be restored only if he has paid a full debt he owes to society as a consequence of his conviction of that felony. The principal question before you today is whether a central requirement of Amendment 4, namely that all felons complete all financial terms of their sentences, is unconstitutional as applied to felons who are genuinely unable to pay them. The District Court, following the Jones panel lead in applying heightened scrutiny, held that it is unconstitutional and it ordered that such felons be immediately reenfranchised while felons who are able to pay must continue to do so. The District Court also held that requiring felons to pay court fees and costs violated the 24th Amendment ban on imposing a tax on the right to vote. The District Court and the Jones panel took a very lonely path. No other court has ever taken it. No other appellate court has applied heightened scrutiny to a law restoring the right to vote of disenfranchised felons. Every other court considering a constitutional challenge to such a law has upheld the law under rational basis scrutiny. And with specific reference to requirements that felons complete the financial terms of their sentences, all three appellate courts to consider a wealth discrimination challenge to such a requirement have rejected it and upheld the law. The District Court's 24th Amendment rule also stands alone. Three circuits have rejected similar claims. The District Court made several legal errors, but the most fundamental error made by the District Court and the Jones panel was a factual one. The Jones panel put it this way, it is undeniable that LFO requirement punishes those who cannot pay more harshly than those who can. This fact was the fulcrum of the court's entire analysis, but not only is it true. First, Amendment 4 punishes no one. The financial terms of a felon's sentence were imposed because he committed a felony and the state's continuing demand that he pay them is not some new and different punishment. Amendment 4 actually does just the opposite. It opens a path for removing the felon's punishment of disenfranchisement. Nor is it true that the state's demand for payment punishes an impecunious felon more harshly than a wealthy one. If two people commit the same crime and are sentenced to the same prison term, the same supervisory term, and the same fine, has one been punished more harshly than the other? The answer does not change if one has financial means and the other does not. But now look at them through the lens of a District Court's injunction. The wealthy felon cannot vote until he has satisfied his punishment in full by paying his fine. But the District Court's order effectively commutes the impecunious felon's fine insofar as his voting rights are concerned. A second fundamental error lies at the heart of the court's decision to apply heightened scrutiny. The Jones panel determined that the plaintiffs have a right of access to the ballot box, but they do not. They lost that right upon their convictions. Justice O'Connor addressed this point twice in Harvey. Quote, plaintiff's right to vote was abridged because they were convicted of felonies. What plaintiffs are really complaining about is the denial of a statutory benefit of reenfranchisement. This is not a fundamental right. It is a mere benefit that Arizona can choose to withhold entirely. Justice O'Connor went on to write this. Arizona had a rational basis for restoring voting rights only to those felons who have completed the terms of their sentences, which includes the payment of any fines or restitution. Because the state could rationally conclude that only those who have satisfied their debts to society through fulfilling the terms of a criminal sentence are entitled to restoration of their voting rights. The people of Florida concluded that as well, and they are entitled to reversal in the judgment below. Thank you, Mr. Chief Judge. Okay, let's talk a moment about the 24th Amendment. You've been focused on the 14th. I understand your argument that costs and fees are not an other tax within the meaning of the 24th Amendment, but I'm having a big problem with the other part of your argument about reenfranchisement, that the 24th Amendment doesn't apply because this involves reenfranchisement. So let's consider a couple of hypotheticals. Let's consider you have a felon who is white and a felon who is black, and the state says we're going to reenfranchise white felons but not black felons. Wouldn't that plainly and clearly violate the 15th Amendment? Mr. Chief Judge, I believe it would. Okay. If that's true, okay, good. And just say that we won't reenfranchise a male versus a black felon, and we won't reenfranchise a young felon, but we will reenfranchise an old felon would violate the 26th Amendment, right? So wouldn't it also be true then that, let's say the felon has completed all terms of the sentence, including all the financial terms, the state couldn't then impose a poll tax on the felon before giving him the right to vote, right? That's right, Your Honor. And I think that really, if I could proceed from that point, if the state is not eligible and then impose a poll tax on felons, it clearly would violate the 24th Amendment because there would be no germaneness to that exaction of qualifications to vote. So if the cost and fees truly were a tax, you'd have a problem, wouldn't you? Yes, Your Honor, we would have a problem if they were a tax. For example, if the state had said, when it convicts one in a statute, that in addition to all the costs and fees and the fines that are imposed upon the felon, we're going to institute a new type of imposition, a tax on any felon that ultimately is reenfranchised either automatically or through the clemency process, that would be a tax. But Your Honor, to come back to your question, which is a harder one. Well, I think I would need to make sure Judge Wilson may have a question. Yeah. Excuse me. Is it my turn, Chief Judge? I'm sorry to interrupt, Court, but we're having technical issues streaming to the public.  Let's stop the clock. Okay, counsel, I apologize for this, and especially when the public sees this, I apologize to the public. Mr. Cooper, Judge Wilson was beginning to ask you a question. Judge Wilson? Yes, Your Honor. Thank you. Good morning, Mr. Cooper. Good morning, Judge Wilson. I would like to continue on the issue of the 24th Amendment. As I understand the state's position, the 24th Amendment does not apply to felons because they no longer have the right to vote, so a tax cannot prevent them from exercising a right that they do not have. Is that the state's position with regard to the 24th Amendment? Your Honor, the state's position is exactly the same position outlined by Justice O'Connor, that the felons do not have a fundamental right to vote until that right has been restored to them. Until that time, they have a statutory benefit, and that too... Is that in the Constitution? I don't see any exception in the Constitution, in the 24th Amendment, for felons. It doesn't say that your right to vote cannot be conditioned on payment of a tax unless you no longer have the right to vote, in which case your right to vote can be conditioned on the payment of a tax. It seems like you're reading words, you're adding words to the Constitution, you're adding words to the 24th Amendment. Your Honor, the state can make felon status a qualification for the right to vote. Section 2 of the 14th Amendment makes that clear. That's in the 24th Amendment? It's in the 14th Amendment, Your Honor, and the Richardson case makes clear that states may disenfranchise felons for no reason other than that they are a felon. So then the question becomes, on what conditions can the states impose to restore that felon to the franchise? And Your Honor, that is a question that certainly is also controlled by constitutional restrictions, as Judge Pryor identified and Judge O'Connor. Let me ask you this. Let me ask you this. What factors would we look at to determine whether or not fees or costs are impermissible taxes under the 24th Amendment? If you were to identify some factors that we look at, what would those factors be? Well, Your Honor, I think the factors that we've outlined in our briefing are there's no material or principal distinction between a fine in Florida law imposed on a felon and the cost and fees that are automatically imposed on a felon. Hasn't the Supreme Court identified some factors that we look at, the primary factor being whether or not the fee or the cost produces revenue to the state? In the Florida Constitution, Section 14, Article 5 of the Florida Constitution and Chapter 938 of the Florida Statutes make it pretty clear that court costs and fees fund certs of the courts and court-related functions. These fees and costs go to the government, don't they? And they're paid by the legislature. Your Honor, so also do fines. Fines also are used to fund the government, the court operation, no less than costs and fees are. Ms. Martin, do you have a question? I do. You can finish answering Judge Wilson's question if you'd like. Yes, Your Honor. You were finished. Okay. I want to be sure I understand your position. I appreciate you being here to help us to facilitate these folks addressed by Amendment 4 in determining what amounts they might owe to the state. Am I right about that? Your Honor, what we've argued is that no more than the state would have an obligation to investigate the personal financial circumstances of a welfare applicant who's also seeking a statutory benefit. It has no greater obligation to do so with respect to a felon seeking information about the felon's eligibility for reenfranchisement, a statutory benefit. Just reading from your brief, you say you criticize the district court because it says, because you say they gave no, Judge Hinkle gave no legal basis for charging the state with the responsibility of providing felons with information about their own unfulfilled criminal sentences. So you say the state has no obligation to do that as I understand it. Am I right? Your Honor, let me refine that point as we attempted to in our reply brief, which is the state doesn't have an obligation to serve as private investigator for the, into the personal factual financial. I'm not talking about hiring a personal private investigator. I'm just talking about somebody sends in their registration, their voter registration. The state has a different view about what they owe than that person has about the amount that's owed and, you know, does the state have any obligation to clarify for them what they owe? Certainly with respect to ultimately determining eligibility, the state and the felon have to get on the same page and they do that. They do that both before registration under the advisory opinion process. That's not working though, right? I mean, Judge Hinkle said the state has shown a staggering inability to administer this process. And as I read your brief, your answer is not, oh no, we've done a good job. Your answer to that is it's not necessary that we do that. Am I, am I misunderstanding your argument? Your Honor, ultimately it is necessary, yes, for the state to, to identify the amounts owed by the felon to determine if they have satisfied the first dollar policy and it is for the state. And what steps has Florida taken to do that? Well, thank you because, Your Honor, I think it's very important for the court to understand that in, that it's taken steps both before eligibility, before the registration and after the registration. Before the registration, it has the advisory opinion process, Your Honor, and... But have any of the people that have requested an advisory opinion gotten one? Yes, they have, Your Honor. How many? Honestly, I don't know the answer to that, but it's been, you know, several. And, and those answers have been posted now. Prior, you'll be up next. You can finish, Mr. Cooper. Thank you. Those answers have been posted on the, on the state's Division of Elections website. Which is to the extent the state does not have in the advisory opinion process, credible and reliable information that, that the felon has not satisfied the felon's financial obligations, the state defaults to favor the felon. It resolves uncertainty in favor of the felon. And how often has that happened? We're, we're at the front end of this process, Your Honor. Never? Has it ever happened? It has happened at least once. It has happened at least once, but again... Judge Dale Pryor, do you have a question? Yes, I do, Steve. Mr. Cooper, I want to talk about your argument that this is a disproportionate impact case, controlled by Washington versus Davis rather than Griffin, and most recently, MLB. You argue that the act is not a law that disadvantages all indigent and does not reach anyone outside that class, to use the Supreme Court's language in MLB. In making this argument, it appears to me that you define indigent pretty narrowly as below the poverty line or basic subsistence level. Is that your argument? Yes, Your Honor. Yes, Your Honor. We don't... Let me continue on how I should answer. So, for example, you argue that calling a felon indigent because he or she can't pay $1,000 would mean that 60% of all Americans are also indigent. In other words, you're saying the fact that a person can't afford to pay $1,000 doesn't make her indigent. Is that your view? Your Honor, our view is that the requirement to pay your financial legal obligations is not confined to those people and only those people who are indigent by really most any standard. It also applies to a very wealthy felon who... I don't think your argument is consistent with what the Supreme Court meant by indigent in MLB, because in MLB, the amount the plaintiff couldn't afford to pay was well over $2,000. So, doesn't that fact necessarily mean that the Supreme Court was speaking more broadly, and in fact, the Supreme Court has used the term inability to pay or unable to pay in all of these cases? Is that right? Your Honor, again, MLB, our test comes from MLB itself, as it was explaining the decisions that it was distinguishing from Washington versus Davis. If indigent in the quote from MLB refers to people who are simply unable to pay, and it seems to me that feeds your argument about disproportionate impact because everyone who's unable to pay is unable to vote. Well, that would bring at least the argument into the field that MLB identified, because if it's anyone who's unable to pay, even a millionaire who can't pay an indigent, the class would apply only to those indigents and to all indigents. You're right, if you define that. About a millionaire who can't pay, that person can't be what the Supreme Court is talking about. Your Honor, that person, we would respectfully submit under any reasonable understanding of indigency is not indigent. Yes, that person is unable to pay. In one example, in this very case, a $56 million restitutionary judgment, but that person can nonetheless be anything but indigent, Your Honor, quite well off, and be within the class if you define indigency that long. One more question, Mr. Cooper. Isn't it true that the Supreme Court has never required proof of discriminatory intent in a wealth discrimination case? In the wealth discrimination cases dealing with imprisonment and dealing with access to courts, I believe that is true. Judge Jordan, I apologize. I skipped you in seniority because of the way the videos are lined up on the screen. I apologize. You were actually next. Do you have a question? Thank you. Good morning, Mr. Cooper. Good morning, Judge Jordan. Mr. Cooper, let me turn to rationality, if I could. The state is unable to tell felons what their LFOs are, and at the time of trial had processed zero out of 85,000 applications by felons for voter registration. How is that rational? Your Honor, once again, the process that the state is trying to cope with is one that it is formulating now in the aftermath of Amendment 4, and to be sure, conforming its processes to this very large and new body of potentially eligible voters has been very difficult. The point I want to make very clear, however, is to reiterate, in the advisory opinion process that the state has adopted, when it gets a request for this investigation of its sources, all sources in the criminal justice process, it gathers the facts from the felon himself or herself, and only if it has reliable and credible information that the felon has not paid those outstanding financial obligations does it contest eligibility. Mr. Cooper, what does it say? Mr. Cooper, if I could interrupt you for a moment, please, because we've got limited time. What does it say that Florida was not even able to process the applications of the 17 plaintiffs in this case during the entire time that the trial was pending? Florida couldn't even process 17 applications, even using what you say is the advisory application process, the advisory opinion process. What does that tell you about the rationality of Florida's system? Your Honor, it tells me that Florida did not get its act together as quickly as one would hope, to be sure, but I am here to tell you that Florida has now gotten its act together. It has responded to some 35 or so requests for an advisory opinion. It has responded to them quickly and promptly, and most importantly, when there is doubt about whether or not the individual felon has satisfied their legal financial obligations, it has resolved that doubt in favor of eligibility. That effect on the website now. Excuse me. I'm sorry. Good morning, Mr. Cooper. Thanks for being here. It seems to me that the Harper case looms pretty large here. What do you say in response to your adversary's argument that the Harper court didn't really hold or assume that the petitioners there had a right or a fundamental right to vote, that it seemed to sort of bracket the question and say, well, in any event, even if that question is disputed, I think the court said it's enough to say that once the franchise is granted, lines may not be drawn which are inconsistent with equal protection clause. So isn't it too simple for you to say, well, yeah, but Harper's different because those plaintiffs had a fundamental right to vote these plaintiffs don't? No, your honor, I don't think it is. I think that whether you characterize it as fundamental or not, they had a right to vote. It's hard to understand how a statutory right to vote that could be, your honor, could be denied on the basis of a poll tax, which is exactly what took place in Harper. Once the state accords a right to vote, for example, if it accorded felons, in this case, a right to vote, there's simply no doubt that it couldn't then say these felons have to pay a $10 poll tax in order to cast their votes. All right, very well. Let me play a lightning round. Since we've got limited time, bounce around a little bit. Another one that has been bothering me a bit, this first dollar policy, how is the first dollar policy really rationally related to the supposed interest in requiring the felons to pay their full debt? Because as I understand it now, under the first dollar policy, you might pay a sum that really has nothing to do with or something, and that that still counts. Isn't there now some sort of fundamental disconnect between the interest and the policy? Your honor, I don't think so. Your honor, I think it's entirely rational for the state to decide, even if only as a matter of administrative feasibility, that they're going to credit the first dollar paid by the felon to the amount identified in the sentencing documents, which is the full amount that was assessed against the felon at sentencing. To be sure, it doesn't make the state whole, but 7066 itself says that any amounts that may approve after sentencing should not be taxed or assessed against the felon. Excuse me. Yes, Mr. Cooper, I wanted to give you an opportunity to come back to, we've been talking about some of the administrative difficulties that the state has faced in implementation of this legislation. I know you've talked about today that you've not had very many, the state has not had very many requests for advisory opinions, but there are some other avenues that are also available under the statute for felons as they seek to determine what amount they owe. They can seek the advisory opinion, but there's some other statutory avenues other than finding out the amount they owe and paying that off, correct? Yes, your honor. Well, they can consult the judgment that was entered against them at the time that the sentence was handed down. That's the place to start, obviously. And the felon would have been given that information at the time of sentencing, at the time the judgment was entered, correct? Yes, your honor, the felon would. And as I mentioned just a moment ago, 7066 itself says that any amounts that accrue as against the felon after the time of that sentencing will not be counted against the felon. And that's the real source and rationality, if you will, Judge Newsom, we would submit to the first dollar policy. It comes from the legislature to the extent that that isn't rational, then the remedy is not to throw the, you know, financial obligation completely out the window. But there's some other avenues as well. The felons can seek to have the obligation converted to community service hours, is that correct? Yes, and move back to the judge to have the financial obligation effectively eliminated. And how many applications or how many felons have sought to have them converted in that manner? Your honor, I apologize, I don't have that figure. I'm sure I can get that from my colleagues. And there's also an avenue for executive clemency, is that correct? Of course, your honor. Even those felons, again, who are unable to pay and will be permanently unable to pay can seek clemency from the discretionary process that the state's laws permit. And Mr. Cooper, I know we have a Florida Supreme Court advisory opinion that the Florida Supreme Court rendered after the statute was passed at the request of the governor. What deference should we accord that opinion? Your honor, I think insofar as it interprets Florida law, I think you have to basically defer to it completely. That Florida has at least been asserted to be problematic in that the plaintiffs have said that Florida has not provided enough money to actually go through the process efficiently and effectively for all the felons who wish to reenfranchise. Assume for purposes of this question that that's true, that there hasn't been enough money. If the state determined that a good way to provide more funding would be to prospectively add to each new felon's sentence a $100, say, voter fee or amendment for fee or reenfranchisement fee that was attached to the person's sentence regardless of whether they actually ever sought reenfranchisement or not. It was applied to that person. Would that be constitutional under the 24th Amendment? Your honor, I think that would be very, very hard to square with the 24th Amendment. I think it would be too closely akin to a fee that attached after eligibility of felons. The key point is this, to my mind anyway, it would have no germane relationship to qualifications to vote. That was Harper's test. But your honor, it's important that I add this. When you're talking about the fines and the fees that are imposed as a punitive sentence initially on the felon, there's nothing that punitive fines and costs as opposed to a fine that was explicitly designed to allow them to vote. And that's because, your honor, a felon status is a constitutional level disqualification or qualification to vote. And so if the state has decided to disqualify felons, it can certainly, because that's germane to the qualification to vote, it surely can insist that the felon serve the full sentence that was attributable to that very felony. Is there a difference between this fee that I'm talking about, which would only be added prospectively and would apply to everyone regardless of whether they tried to become a felon or not? Is there a difference between the fee and some of the fees that the state currently requires that it's alleged go to payment of court costs and things like that? Your honor, yes, your honor. Those fees are in the nature of mandatory minimum fines. They are imposed only on the guilty. They are indistinguishable in terms of how they are collected, how they are used. Thank you. I don't have any questions, Chief Judge, but I would like an answer to finish the answer to Judge Grant's question. Okay. Thank you very much, Judge Loeb. They're simply materially indistinguishable fines. And I don't think anybody, even the plaintiffs, disagree with the proposition that, and neither did Judge Hinkle, that insisting that the felon pay his fines is not a tax and, once again, is directly germane, your honor, to the very reason that the felon was disqualified in the first place because felony status is a germane qualification to vote itself. And so, your honor, again, just as I argued to the Chief Judge, there simply is no material distinction between those fines and the costs and fees that are also effectively fines imposed only on those who are guilty. Those who are acquitted don't have to pay costs and fees. They obviously don't have to pay fines. Judge Loeb, do you have any questions now? No. No questions for me. Thank you, Chief Judge. Judge Lodella. Thank you, Mr. Cooper. I just have a couple quick questions. Regarding the enabling statute 766, as going back to questions that Judge Branch asked you, felons who have completed their carceral prison sentences, if they have obligations to do fees and costs or restitution, they also can ask for a modification, a court modification, for the original sentencing order. That's correct, right, under the enabling statute? Yes, your honor. That's clear on the 766. Is there any evidence that was presented below to Judge Hinkle that the state is in any way, shape, or form impeding a felon's right to be able to seek a court modification of the original sentencing order? I'm aware of no such evidence in the record. I apologize that we're jumping around because this is not like a traditional oral argument. You argue in your briefing regarding bearding that the bearding cases are inapplicable. In each of those kinds of cases, the Griffin bearding, there are two types of situations that come up. There's either access to the court or determining the length of a prison sentence. If we come to the understanding that disenfranchisement is part of the felon's punishment, why shouldn't we apply bearding here? Your honor, bearding dealt with a situation where an individual received probation rather than a prison term. Then, probation was revoked because the felon could not pay his fine. What the court held was the offender had a conditional liberty that due process protected because the state's punitive interests could be satisfied without a prison term. The court didn't say in bearding that that automatically means that the felon can't be sent to prison. It simply said that the court has to inquire into why the felon didn't pay the fine and consider alternatives to payments of the fine or at least immediate payments of the fine before determining whether the state's punitive interest can be satisfied through some method other than imprisonment. It applied essentially what he called close consideration, not a heightened scrutiny. Our point here is that, your honor, first of all, individuals, felons, they have no conditional liberty to vote unlike the offender with his conditional liberty to be free from imprisonment until such time as they satisfy their legal financial obligations. If any other member of the court has questions and can interrupt at any time, I'm going to allow Mr. Cooper to keep going, but everyone's had an opportunity to ask questions. Mr. Cooper? This is Judge Wilson. If I could pick up again on the 24th Amendment argument, aren't fines intended to punish rather than raise revenue for the state unlike fees and costs, Mr. Cooper, which is why Judge Hancock ruled the way that he did? A fine is for the purpose of punishment, right? A fine is for the purpose of punishment. We're arguing to you, your honor, that so also for the purpose of punishment are the costs and fees that are assessed, again, only against... But the fees and costs go into the state's coffers. Isn't that correct? Well, your honor, yes, they do. They go into the state's coffers in the same way as the fine does. But don't some of those costs go into the state coffers, but in essence, they're also going to these special funds that are for purposes of restitution for victims as well? Isn't that one of the fees and costs that's collected? Your honor, the method and purposes for which the state ultimately decides to distribute the financial terms of sentence that have been assessed and imposed upon a felon, we would submit to you is not the dispositive basis for determining whether one's punitive and the other is not. Mr. Cooper, could I ask you a question, please? In a state that has never taken away the franchise from felons, do felons have a fundamental right to vote? Your honor, they at least have the same right to vote that was at issue in the Harper case. That's not my question to you. In a state that has never taken away the franchise as it's permitted to do, do felons have a fundamental right to vote? Your honor, those felons who are exercising that right to vote have a right to vote. Is it fundamental? Well, your honor, even if you consider it or not... No, I'm not considering it. I'm asking you. Is it fundamental for felons to vote in states that have never taken away the franchise? I'd like an answer to that question, please. Your honor, I actually don't believe that it is fundamental because... That's sort of a right, is it then? Because I believe the state could then decide going forward that felons cannot vote. But in my hypothetical, they haven't taken it away. No, they haven't. They're exercising it. What sort of a right are they exercising? They're exercising a right that is protected by the 24th Amendment. It would not be able to be conditioned on the payment of a tax, whether they're felons or non-felons. It would not be a right, certainly, that the state could not draw arbitrary distinctions among felons, such as on the lines of race, or as Justice O'Connor observed on height, only being equal to those who are six feet tall. That would be irrational, your honor. They wouldn't be able to impose, as I said earlier, a tax because that tax would have no germane relationship to qualifications to vote. The tax as a naked and raw poll tax. But your honor, for those people who do not have the right to vote, felons in the state of Florida, fundamental or otherwise, your honor, there is nothing more on than that they pay their debt to society, a debt that includes, your honor, their financial terms of their sentence. If I may, has any Florida court considered whether Amendment 4 was self-executing? I don't believe that there is a decision on that question. I do believe that 7066, to the extent that it defined all terms of the sentence to include financial terms, had no discretion to define it any other way. The Florida Supreme Court made that very clear in its interpretation of Amendment 4 itself. Cooper, the Florida Supreme Court did not rule on whether Amendment 4 itself requires the payment of all legal financial obligations before exercising the franchise, did it? Yes, your honor, I believe it did. It only interpreted the Senate bill, Senate Bill 7066. It did not rule on whether Amendment 4 requires the payment of these obligations before exercising the franchise. Am I wrong about that? Your honor, one of us is. It was certainly my grasp. Okay. Mr. Cooper, your time has expired. You've saved 15 minutes for rebuttal. We're going to hear now from Ms. Ubudu for the first six minutes uninterrupted, and then we'll turn to Mr. Smith and then to Ms. Ebenstein. Ms. Ubudu. Good morning, Chief Judge, and may it please the court. What this court has just heard is that the state does not have a single legitimate constitutional or statutory argument to uphold those portions of Senate Bill 7066 that bar people from voting solely based on their economic status. Moreover, this court's questions to the state reveal the very serious doctrinal and practical consequences that will flow from conditioning the right to vote on the payment of LFOs for those who are genuinely unable to pay. The doctrinal consequence, of course, is defying Supreme Court precedent, striking down burdensome voter qualifications, especially those that are extremely difficult, if not impossible, to satisfy. The practical consequence is the erosion of our democratic principles if this court adopts the state's position as it applies to lower-income and poor people in our society in denial of their franchise based solely on their class. Many of the people impacted by Senate Bill 7066 were poor enough that the state was required to assign them a court-appointed attorney. Many of them still struggle to find gainful employment that pays a living wage, and 80% of those with LFOs cannot pay them off, definitely not in time for today's Florida primary, not by November's election, and many will never be able to vote under Senate Bill 7066. So this case is about real people, people like Rosemary McCoy, who actually received an order of satisfaction of judgment, registered and voted since amendment forced passage, and is now being forced to pay almost $8,000 so that she does not, in order for her to be able to vote again. It's about Sheila Singleton, who has the majority of her LFOs imposed three years after her sentence, and yet her voting rights remain in limbo because of the state's confusing stance on which LFOs actually must be voted. And then there's Pastor Clifford Tyson, who has spent countless hours to no avail trying to figure out what, if anything, he owes just so he can vote. The state already knows that these individuals, who understandably are focused on putting food on the table and a roof over their heads, do not have the financial resources to pay to vote. That is why cases like Griffin v. Illinois and Bearden and Harper protect the most economically and politically vulnerable in our society, which our clients are. These cases affirm that the Due Process Clause and the Equal Protection Clause guard against government overreach, like in the case of Florida, which, in violation of Harper, has absolutely made our clients affluent of voter qualification. Now, my colleagues, Ms. Ebenstein and Ms. Chisholm will offer responses to the court's specific questions regarding the unconstitutionality of SB 7066. However, in light of your honors questions and the state's responses, we just want to emphasize two important points. First, that Harvey, upon which the state really overly relies, focused primarily on payment of LFOs regardless of one's ability to pay. In addition, the Harvey case did not contain nearly the same volume of evidence related to the impact of a law like Senate Bill 7066 on low-income and poor people. Moreover, the most relevant language from Harvey is Justice O'Connor's repeated statements recognizing that a law like Senate Bill 7066 probably would never even pass rational basis, let alone heightened scrutiny. Second, the Due Process Clause demands basic protections when it comes to notice of voter eligibility and a reliable and efficient procedure through which to confirm that eligibility. Every single document related to a person's criminal sentence is created by and is supposed to be obtained by the state of Florida as the primary generator repository of Florida criminal convictions. There is no better source than the state itself. The Due Process Clause approaches notice from the ordinary person's perspective, and the state is no ordinary person. It possesses a level of sophistication and access to data that is unparalleled by any one individual. Therefore, if the state cannot determine with outstanding LFO, and if so, how much that person owes, how is the individual supposed to sort that out on their own? And finally, today is Florida's primary election, and newly enfranchised people who do not have LFOs are voting for the first time in years. So, this case is not about Amendment 4 in its entirety. It is about the larger group of people who remain marginalized and excluded from our democracy simply because they cannot afford to be part of it. Therefore, we're asking this court to uphold a foundational principle that when it comes to voting, the size of a person's pocketbook alone should never dictate access to the ballot box. Thank you. Thank you. Mr. Smith, you may go next. The questions from the court this time, will come in reverse seniority order. So, Judge Lagoa is free to ask you a question from the moment you start, but I'll let you start. Happy to do that. Let me just say, we represent the razor pointers in the class, and we agree with Ms. Abudu that the judge's opinion below should be affirmed in its entirety. Mr. Smith, if I may ask you a question. Do you agree that the denial of franchise based on the class of wealth or indigency, do you believe that that indigency is a suspect class? No, Your Honor. The way the wealth discrimination class of cases work is that if there's a sufficiently important interest that is triggered by the non, and at loss of it is triggered by non-payment of a fee because people can't afford to pay that fee. But in the wealth distribution cases, mainly, isn't the reason that the courts rule the way they do because there's an absolute deprivation of a benefit to someone who is indigent? There's a deprivation of an important enough interest. The Bearding case says we weigh the important interest for the individual against the state's interest. And because... Okay, let me ask you a question this way. At the court of appeal, obviously, or even at the trial court, but let's talk about the court of appeal. If you want to file an appeal, you have to do a filing fee. And most of the times, if someone is... They file an illicit indigency, and then we weigh the filing fee requirement, right? That's not a constitutional that we weigh the indigency point to find. Your Honor, the Griffin case says that you have no constitutional right to an appeal at all, but that if the state makes an appeal... I understand that, but what I'm saying is we file a fee requirement, and we allow them to file the appeal if they can show that they are, in fact, indigent, correct? Yes, Your Honor. Right. So let's talk about the indigent statute, 7066. In 7066, there's specific language... Let's go with the question. The time moves faster on this record. I'm sorry. 7066 specifically allows for a trial court to get modification of an original sentencing order, and that pertains to fee, cost, restitution, fines, and fees. Why is that not the same? Why is it not the same? Well, Your Honor, there's no showing in this case that that's a meaningful remedy. Restitution can only be weighted with the constitutional... Miami-Dade County had a pilot program that Carlos Martinez testified... Mr. LaBella, Mr. Smith's going to need to finish that before we then turn to another judge. I would just say that the state made no effort to make a remedy that would in any way affect the constitutionality of the system at issue here. Okay. Judge Love, do you have a question? No questions for me, Chief. Thank you. Okay. Judge Grant. You're muted, Judge Grant. You're muted. Someone had to be the one. My question is digging into an argument that the various judges have made. Is this really a welfare... And that's based on the fact that maybe someone has a $50 million forfeiture judgment, criminal forfeiture judgment, or a fine, and they can't pay that, and maybe has a $1,000 set of fees, and they can't pay that. But those two people would both be restricted from re-enfranchising, but their financial circumstances would be very different. So, I'm just wondering if you could elaborate a little bit more on that. Your Honor, the $50 million case is one in a thousand, or one in a million. My run of cases here are people that owe somewhere in the nature of $500,000, $2,000, and they're indigent, and they don't pay it. People who can pay that amount pay it during their probationary period, because there's lots of reasons to encourage them to pay it. It's the people who come out of probation owing those kinds of sums. In fact, the majority of the people in the state have no fees and costs that are automatically assessed to pay for the court system, and that's often less than $1,000. So, while there is a plaintiff here with a big out-of-state restitution judgment, I don't think that should affect the analysis at all. What we're talking about is fees in the small four-figure range that indigent people, almost by and large the entire group are indigent, can't pay. And that's the problem. The state is keying the right to vote on the inability to pay something that people are unable to pay, and under the cases of the Supreme Court, as laid out very clearly in MLB, that's unconstitutional. Voting is one of those interests that you can't deny people based on their inability to pay that kind of sum of money. And if I've got a moment, I'll ask you, in your view, was amendment for self-executing, or did it require legislation from the Florida legislature to enable felons to take advantage of the options outlined, or the re-enfranchisement offered in the amendment for? My understanding is it was self-executing, but that doesn't mean the legislature wasn't within its rights to come in and add additional provisions. Okay. Judge Branch? Yes. Aside from a criminal decision, any case in which a court has applied heightened scrutiny in that scheme? Where this issue was even decided was the Johnson v. Grayson case, and admittedly, that could be correct. But the other cases that are out there don't involve this kind of empty argument in the way that we have here. And I think that the court in MLB makes clear that that's the right answer. In the Harvey case, for example, there was no indigency claim at all. And Justice O'Connor said, if there had been, I might very well rule the other way. It might be irrational. But so if we adopt your proposed analysis, aren't we creating a circuit split? Oh, undoubtedly, Your Honor. If you were to agree with everything we say in our brief, there would be more than one conflict with the Sixth Circuit decision in Johnson v. Grayson. But I think we have the better of the argument because we have the Supreme Court on our side. And let me ask you a question that I asked opposing counsel. What are, what does a Florida Supreme Court advisory opinion? We don't have any quarrel with the Supreme Court advisory opinion. Our argument here does not turn in any way on your second guessing it or anything like that. That's all I have. Okay, Judge Newsom. Good morning, Mr. Smith. Morning, Judge Newsom. Um, all right. So if we take from section no longer enjoy the right to vote, have felons in this case any differently situated than would be, say, the applicant for a hunting license or something, who's, it seems to me like that's a matter of statutory grace or benefit in the way that the right, whatever right to vote that your client has is. And is there a day that leads up into a situation where we have, for instance? I don't see that as a problem, Your Honor, because the Supreme Court's analysis says there are a handful of very important interests that create a wealth discrimination problem, even in a situation like this one, where the state is giving it to them as a matter of grace. Bearden is such a case. This is a felon who was getting probation only because the state decided as a matter of grace to let him have probation. And it was conditioned on having to pay what he couldn't. They wanted to put him in jail. And the court said, well, you can't do that. Grisham is exactly this case. You have no constitutional right to a criminal appeal, but when they give it to you, and personal liberty are the core ones, those are the ones that are going to be okay. And the rule in most other cases, as MLB says, is the state can charge a fee if you can't pay it too bad. But this is not that case. Claims which exit core of the 14th Amendment require a showing of discriminatory purpose. Claims which are, you know, sort of one ring out on the bullseye do. National origin do. Alienage do. And yet, wealth discrimination claims which seemingly exist on the outer periphery. And as I read MLB, it seems to me what the court is really saying is that because the classification there is discriminatory intent, it's a very important requirement of the FBI. I'm out of time. I'll make a quick answer here. The rule is that a facial classification does not exist. Virginia says you can't call it a VI if you're a woman. Nobody requires the plaintiff to show intent. And what the court of MLB is, is that a wealth of court of interest goes with the plaintiff and those who can't. And then we're going to have a classification that requires complete intent. Okay. Judge, go prior. What state's representation may be more or less about what the state has done or will do administratively, given that our contrary district court findings and the trial? Your Honor, the references today to the advisory opinion process was a little surprise to me, since it wasn't even invented until the time of trial. It had never been used until after trial. And it was the remedy that the district court chose to use as the district court's remedy. It was a quick advisory opinion. I'm still confident with the references that were made today. Let me ask you another question. My question is, in other words, the state saying that if someone can't ultimately win the vote, they don't have to get notice in the forensic process. That seems to me to be contrary. I was very clear that the state is going to say you have to pay a sum of money to vote. And the state can't tell you how much it is. And you're entitled to know what type of razor has, or maybe you can borrow it from your rich aunt, or maybe over time, you'll save the money, but you have to know what you're up against. And to suggest, and using the state's records is a mistake, based on the database, so they tell everybody what they owe and what accounting method they're using. Thanks, Jordan. To follow up on Judge Pryor's question, do you know of any condition on the exercise of a benefit? It seems to us a fundamental problem, particularly here, the important interest, the right to vote, and the condition is a well-factored question. We can't say, but we are not going to have a system that allows you to vote. It's a constitutional problem. Eligibility condition, but we won't tell you what it is. That's all I have. Thank you. Thank you. Thank you. Judge Martin. Good morning. I would like to take it from the example of deprivation that you're alleging on your client since deprivation occurred. Well, Your Honor, they were barred from voting by the, before Amendment 4, who voted against Amendment 4, and they say that going forward, people who will have the right to vote once they've completed their sentence. And what that does then is it creates two classes of people, those who can afford to finish the last stage of their sentence by paying fines and fees, and those who cannot. And so that distinction becomes the equal protection problem. We have vast majority of the people, once they get out of probation, are not going to be able to pay this money. Again, that explanation within the structure laid out in some detail by the Supreme Court in the MLB case. I hope that answers your question. I think it does. Thank you. No other questions from Judge Martin? No, thank you. Okay. Judge Wilson. Justice Smith, Judge Hinckley's order provides related to felons who filed an affidavit of 24th Amendment prohibits conditioning the right to vote on the payment of any tax, not just on taxes that a person cannot pay. Why isn't the relief that is afforded by a district judge in this case too narrow? I'm sorry, I'd have to go back and read. It's a fairly complicated remedy section of the opinion, but certainly the right relief with respect to the 24th Amendment claim, if you agree with Judge Hinckley that the fees and costs are taxes, but the fines and restitution are not, the right relief would be to say that no one has to pay their fees and costs in order to vote. They still own them. They still can be enforced in other ways, but as to the right to vote, if all they owe is a fee and a cost, and that's the majority of the class here, they should be able to register now and that the fee and cost becomes irrelevant altogether to their ability to register and vote. If Judge Hinckley didn't do that, he should have. Okay. Well, you said the majority fees and costs are assessed against everybody, every criminal felon, right? And fines and restitution, I would imagine those are assessed primarily for economic crimes committed by white collar criminals who are, they're more likely to be able to pay those costs. Is there something in the record that reflects that or is... That, I'm not, I don't see that in the record, Your Honor, but of course, I mean, it's a fairly large record. It is certainly true that less than half of the people at issue here have fees and restitution, fines and restitution that they owe, while at least all of them have fees and costs because they're automatic and they're imposed primarily for the purpose of paying for the clerk's office and things like that. But whether the fines and restitution can find economic crimes, I'm afraid I just don't have that information for you. All right. I have no other questions. Mr. Smith, would it violate the Equal Protection Clause to require felons who can afford to pay their fees and fines to do so before voting? No, Your Honor. Well, if not, then how can your reading of Harper be right? Harper held that the Virginia, that Virginia's poll tax was unlawful regardless of whether a voter could afford to pay it. So, if Harper applies, it must mean Florida can never require felons to pay their fee, fines and restitution as a condition of voting. Well, there is broad language that Justice Douglas wrote it as was his way back in Harper, but there was also a lot of how the real problem here is discrimination based on wealth. And as the doctrine has evolved, and we've seen this, for example, in the Lubin case. Is it true that it was, am I right, that it was regardless of inability to pay? It was illegal across the board, right? Yes, Your Honor. He does say that using money, a charge of money as a condition of the right to vote is unconstitutional. I don't, we're not asking you to read the current case law of the Supreme Court that broadly, however. There is a poll tax issue with respect to the fees and costs, and there is a wealth discrimination issue with respect to the vast majority of the people in the class who can't afford to pay any of these. Tell me that. Tell me that. Does it violate the 24th Amendment to disenfranchise felons who were convicted because they failed to pay their taxes? If this is a but-for test set forth by the 24th Amendment, it would seem to me you could not disenfranchise tax felons. I wouldn't, I wouldn't take the doctrine that far, Your Honor. It seems to me that the crime of not- I'm talking about but-for causation. Is but-for causation to be taken that far? If you have an entire criminal process in which the person is convicted of a some element of ability to pay, willfulness, all of those things, it's a crime. If you're convicted of that crime, then under the doctrine, you can be denied the right to vote and you can be forced to wait until a certain time if the state wants to do that. I don't think because that was a non-payment crime, that somehow changes the analysis. If there are any judges who have further questions, I'm finished with mine. So Chief, Chief, this is Judge Newsom. Can I just follow up on that briefly, Mr. Smith? Because I was trying to follow along with your answer, but as I, I mean, as I just take the plain language of the 24th Amendment, no denial or abridgment of the right to vote by reason of failure to pay dot dot dot any other tax. Why doesn't the tax fraud example fit the language in the theory of causation that you've advocated? I just don't think I understand. It was intended to have an extremely broad application. That's why they said other taxes and the Supreme Court in the Harmon case made clear we don't want invasion of a ban on poll taxes. But it doesn't seem to me ultimately that that should be extended to situations in which non-payment of taxes has been prosecuted as a willful offense. Is your answer, Mr. Smith, well, that'll be my next case? Well, I think it's a much harder case than anything we're asking you to accept in our position today. That's certainly, that would be true. I'm just trying to figure out sort of the theory of causation that you think the language of the 24th Amendment embodies. Because I took your position to be that it embodies very sort of minimal but-for level of causation, and my fear is that that captures this ridiculous hypothetical. I agree with you it's ridiculous, but I worry that the theory of causation might capture it. I would think the causation, the chain of causation would be cut by the prosecution and conviction of a crime. Here we have nothing like that. We have these fees and costs which are- If that's true, does that suggest then that the language by reason of that appears in the 24th Amendment, that appears in every other Voting Rights Amendment? So 15, 19, 26, all used on account of, this uses by reason of. Doesn't that suggest that it deals with just the kind of problem that we're posing in this hypothetical? I don't really see a basis to draw a meaningful distinction between those two phrases. The phrase by reason of is read very broadly, for example, in discrimination statutes. It certainly can be read that way, but isn't it significant that they chose different terminology and then went back to the old language when it came to the 26th Amendment? If anything, I think it means it's broader, but we're only asking you to apply it to a tax, which is clearly a tax, these fees and costs, which are assessed without reference to anybody's culpability or to the nature of their crime. They're 100% automatic, and they're intended to fund the operations of the court system of Florida because of the amendment that says no other money can fund the court system. If there was ever a tax, it's these fees and costs. And so this is a kind of easy case for the application of the 24th Amendment, it seems to us. I've got a follow-up on Judge Jordan's question from earlier, which was, do you know of any, and I'll improvise, but do you know of any states that provide a benefit, but that do not tell you how to satisfy the condition for that benefit? In cases where that occurs, does the person who's seeking the benefit have a state law problem or a federal law problem? Well, I think it can be both because obviously you have a state law problem, but the right is essentially guaranteed to you, but you can't get it. But then procedural due process comes into play, and this relates to the question that the court asked about procedural due process in the letter that we got this week. The state creates a benefit that you're entitled to when certain conditions are met, and then sets up a process that effectively makes it impossible for you to get that benefit because you don't know what you have to do to satisfy it or what element of proof you have to have, or when you satisfy the requirements, then that's a procedural due process problem as well as a state law problem. Is that true no matter what the state benefit is? Like to take Judge Newsom's example of the hunting license, if an authority cannot get their hunting license because of a poor implementation of procedures, can they go to the federal district court and raise that issue? I have to think about the hunting license in particular. The easier case it seems like is a welfare kind of case where somebody is entitled if they have certain income showings that they make and they're into some kind of welfare. And under cases like Goldberg versus Kelly and Matthews versus Eldridge, if it's a state law right to have a fair determination of whether you've met those criteria, hunting license may be the same. If everybody's entitled to it, all they have to show is that they've met certain specified criteria. I'm not as familiar with what the law is on that, but it really is an entitlement. Maybe a more intermediate example is a driver's license, which doesn't sound as frivolous as a hunting license, but it's something that people rely on and use almost every day of their lives. Yeah, he can touch that story and doesn't live in Alabama. It's important in Florida, the driver's license. I suppose it could very well be that a state could violate procedurals and process if they set their DMV up in such a way that people are being essentially randomly deprived of the opportunity to get a driver's license. The system is so unfairly set up, the test is so bad or something like that. That could very well be both a state law problem and a federal law problem to answer Judge Grant's question. Any more questions? Mr. Smith, you can wrap it up. Let me just wrap it up by saying I think that the 24th Amendment issue was essentially conceded by Mr. Cooper in his answers to Chief Questions in this argument. He said, if it's a tax, then the 24th Amendment applies. It's hard for us to see how it could not be a tax in that it primarily exists to fund the operations of the court system in Florida. The money is earmarked for specific things. It's automatic. It's unrelated to people's culpability. Thank you for the opportunity to talk with you today. Thank you, Mr. Smith. Ms. Ebenstein? Good morning, Your Honors. Julie Ebenstein on behalf of the Groover Plaintiffs. You may begin, and Judge Liddell will be first up if there are any questions. As my colleague has made clear already, under the 14th Amendment, wealth cannot be a qualifying attribute for access to the franchise, and people cannot be punished for their poverty. Well, let me ask you a question regarding the Bearden cases and the Griffin line of cases. Let's talk about Griffin. In that kind of case, the court said that if the state allows you to take an appeal, they can't say you can't take an appeal if you don't have the money to pay for a transcript. Correct? That's what they said. In this case, in the enabling statute in question, there's a provision that the legislature created that said you can petition for a trial court to very clear that it only applies to voting. Why isn't that a safety valve provision that renders the Griffin line of cases inapplicable? So the alternatives provided by 7066 are discretionary in all cases and not even available to every person with a felony conviction. We're going to say that because it specifically says the court may not be prohibited from modifying the financial obligations of any original sentence required under subparagraph A or subparagraph C. And those are the ones that deal with fees, costs, fines, and restitution. Categorically, it's not available to individuals with out-of-state convictions and with federal convictions. Didn't the state concede, for example, for Mr. Phelan, I think he's had a conviction from Wisconsin that he's eligible to vote? The state did say over the course of trial that because he was eligible in Wisconsin under their rules that he would be eligible to vote. But for an individual who is not eligible under their state's rules, a modification is not necessarily available for them. The modification process, even as it exists in Florida, does not appear to be in practice available in each one of the counties. So while some counties, three in particular, have made it available to some people with a conviction, for some convictions, those in that particular county, it does not appear that the other 64 counties offer any sort of modification program, much less any route of access for an individual to go to the courts to complete that modification. The termination and community... Judge Love, you can interrupt anytime. No questions for me, but please feel free to go ahead. In the same way that modification is both discretionary and not universally available for all of those applying, community service conversions are also not available to a large number of individuals, including some of our clients, because once debts have been converted for collection by a debt collection agency, there's evidence in the record that county clerks will no longer allow somebody to convert to community service. The same goes in that instance for federal felonies and for out-of-state convictions. So these alternatives, while they may be available to some, are completely unavailable to others, and when they are available, they're entirely discretionary. In our view, that's inadequate to provide a means of restoration as it's envisioned under Bearden. It does not provide a real route for many or most of those affected. Thank you. Judge Grant? Thank you, Ms. Ovenstein. Are the felons who wish to be reenfranchised really paying a fee to vote, or are they paying fees, fines, and other financial penalties as a result of their... to society, at which point one consequence is that they are able to vote? Your Honor, if we look at two people similarly situated, one who can afford to pay and one who cannot, only for that person who cannot afford to pay is the disenfranchisement ongoing. So as a panel of this court held earlier, disenfranchisement is not just a single momentary penalty. It's an ongoing punishment as individuals miss election after election. It is not only an element or related to the offense, but with 7066, it is something, and in this case, the only thing that prevents that individual from voting. So it does, in fact, at that point, relate only to their right to vote. So I realize that's certainly a consequence, but I guess my question is more theoretical in that this is not a tax that's being imposed on them in order to vote. It's a pre-existing requirement. So in the same way that someone who is still incarcerated cannot vote, or someone who's still on parole cannot vote until they've completed that debt, why is this kind of substantively, theoretically, any different than that since this financial penalty was not imposed as a burden to voting in the first place? Well, I think for two reasons, Your Honor. The first is based on the 24th Amendment. It would, as the District Court found, it would read the 24th Amendment too narrowly to say that only those taxes which are specifically imposed for the purpose of disenfranchisement disenfranchise. So for example, the example that the District Court gave in its opinion was surely they could not say that only those who are current on their taxes have their rights restored and others do not, or any other pre-existing tax, clear tax that applies in order to disenfranchise somebody would be considered a poll tax because of its disenfranchising effect. So I don't think in theory or... I'm sorry to interrupt you, but I know I'm short on time. Is there any system that would require the payment of any financial penalties that you think would be constitutional, or is there no way to require that in the 24th Amendment? When it pertains to a tax, if it is a tax, if in fact the financial penalty is a tax and it prevents the right to vote, that is where it's problematic in our view. And of course, the District Court found that the definition of other taxes did encompass costs and fees, but he determined that it did not encompass fines and restitution. And do you agree with that part of the holding? Judge Branch. You're muted. You can go ahead and answer Judge Grant's question. Whether we agree with that part of the holding. In our initial complaint, we did challenge a broader category of financial penalties, but we have not appealed from the District Court's determination that only costs and fees fall into the category of other taxes. Assuming that we reached the severability question, how do you square the District Court's findings with the Florida Supreme Court's finding that the voters would have understood the ordinary meaning of all terms of sentence to encompass LFOs? Well, Your Honor, the State Court actually did not make a finding as to voters' intent. The State Court, in its advisory opinion, only looked at the statutory, interpreted the statutory language, and decided on the meaning of the statutory language. But it was clear that it did not go beyond that to make a determination either of voters' intent or what voters would have done if there was an exception for this unconstitutional application of the pay-to-vote system. So the State Court never looked at the question that was in front of the federal court, which is whether it's unconstitutional to disenfranchise somebody simply because they're unable to pay outstanding LFOs. That's all I have. Okay. Judge Neeson. So just back to the part of the 24th Amendment that we've been discussing, fees and costs. What do you make of the State's argument that fees and costs are assessed only against those that suffer some conviction of guilt, either a conviction, you know, or probation, and that acquitted defendants do not pay them? So even fees and costs, it seems, are tied in some sense to culpability, criminal culpability. Your Honor, as you said, they are not paid by people acquitted. However, costs and fees are paid by people for whom adjudication is withheld. And my understanding of the adjudication withheld determination is that the individual does not need to be punished. Is there a period of probation that attaches to a withheld disposition? Yes, there is indeed a period of probation. So there's been some finding of criminal culpability. That's my point, is that the those deemed culpable, those found culpable, do pay them. And it just seems to me that that, on balance, puts the costs and fees on the non-tax penalty side of the line rather than the tax side of the line. Well, Your Honor, for a few reasons, we believe it does put it on the other tax side of the line. First of all, to the extent that it is assigned against those for whom there's a determination made that they do not need to be punished. Or do not need to be incarcerated. Not that they don't need to be punished, because isn't probation a form of punishment or no? Your Honor, I believe that the statute that permits for adjudication to be withheld specifies that part of the court's determination is that a penalty is unnecessary. So it's not that probation is nothing, but the specifics of that statute permitting for adjudication withheld actually do speak to that. Costs and fees are also imposed class-wide for any felony conviction, with no account for the nature of the offense, for the degree of the offense, or for any individualized determination of culpability. Moreover, there can be punitive elements. The to raise revenue. So let me ask you this last question just before my panic fires. What accounts for the judgment that acquitted defendants should not pay costs and fees? Presumably, the costs and the fees of actually putting someone through the paces of trial are the same whether they're convicted or acquitted. So what accounts for the judgment that acquitted defendants should not have to pay them? What policy judgment underlies that determination? Your Honor, I believe that there's a separate line of constitutional concerns with assessing costs and fees against those who are acquitted. So, and I cannot cite the individual case, unfortunately, but I believe it's more than a policy assessment on the part of Florida. It's actually a separate barrier that doesn't permit assessments against those acquitted. It's still prior. Good morning. Will you finish with your answer to Judge Neuse's question? I think I have, unless Judge Neuse has had an additional question. Okay. I have another question for you. What is the implication of the fact that the Florida Supreme Court did not address what completion of a sentence would mean? So, I think that's significant because it leaves room for constitutional avoidance. The state Supreme Court in its advisory opinion, interpreting all terms of sentence made a very limited ruling. It did not look at the constitutionality of continuing to disenfranchise somebody who is unable to pay. And it did not, at the specific request of the governor during that hearing, did not define completion. Were this court to affirm the district court's determination? The term completion could potentially be read so as to avoid the constitutional infirmity. I believe the district court in its decision suggested that perhaps completion could mean something like a, when the person had their, had their matter taken out of the criminal system and only had civil fines remaining, or when the person reached the point where they were unable to pay. Either way, to have not defined the term completion, whereas it's defined completion of all terms of sentence in the statute, leaves room for constitutional avoidance that is not, where the state's decision is not in conflict with the US constitution. Thank you. Thank you. Judge Jordan. Senator Steeve, good morning. Good morning, your honor. We've had some talk about the possible statutory avenue of going back to the court of conviction and getting a monetary obligation changed into community service or something like that that is not financial. Do you recall whether the state ever offered that as a rationale or a theory in the district court? Your honor, I just want to make sure I understand your question as a rationale for requiring payment. We're seeing that the current system, as it is being administered, is constitutional because felons have the option, at least those who say they can't pay, have the option of going back to the trial court and asking that their monetary obligation be changed and converted into community service or something else. Your honor, the district court, I'm sorry, your honor, the district court very specifically looked at the alternatives to full payment and found that they were insufficient to change the unconstitutional nature of the LFOs. Specifically, what the court found was that they're fully discretionary in terms of both conversion to community service, termination of the financial obligation, which lays in the hands of a third party, and clemency. Sometimes they are not available at all. In all instances, they are available on a discretionary basis. They are oftentimes illusory. For example, one of our, and the district court used this example, one of our clients who has a $50,000 outstanding legal financial obligation, who's barely able to support herself at her current income, could not work off that debt at $10 an hour through community service in any reasonable amount of time and certainly not in time for upcoming elections. So for her, as for many others, even if they can access the option of community service, and as I said before, in many times and for many convictions that is unavailable, including for those who have a debt already referred to debt collection agencies, even if she could access that, it's not a real option for most people. It's illusory for most people. And that's what the district court found when it reviewed these alternative provisions. Thank you. Thank you, Your Honor. Judge Martin? Thank you for being here to help us with this case. I don't have any questions for you. Thank you, Your Honor. Judge Wilson? I have no questions. I want to follow up on Judge Jordan's question about community service. It seems to me that the availability of converting that financial obligation to community service at least suggests, though, that this is punishment and not a tax. Why isn't that right? Your Honor, I don't think that providing or providing to some small subset of individuals the discretionary option of converting to community service changes the nature of the element of costs and fees. It doesn't change that... It doesn't suggest that the debt is more about the debt owed to society as a result of having committed a crime as opposed to some debt that's owed to the state solely for the purpose of raising revenue? No, Your Honor. I don't think that that changes the nature or the purpose of the assessment. For example, the Florida Courts and Comptrollers Association doesn't expect to collect the vast majority of outstanding legal financial obligations because they are so often assessed against those who are indigent. The state itself does not necessarily expect that in all instances they will be successful raising revenue in this way because of the high rate of indigency among those that cost and fees are assessed against. But I don't think that that expectation or expectation that it may not be successful changes the purpose of the assessment in the first place. I'm sorry. May I ask you a question about indigency? You keep going to indigency. What does that mean? How can we define then what indigency is? Because someone has the ability to have a $1,000 fee converted to community hours that would be 100 hours. Maybe it will take them a while to complete those community service hours. But why does that mean that they're indigent? Your Honor, the nature of indigence, it's a relative term. It's not a singular classification based on a precise income level. And I believe that's footnote eight in Bearden. So while there is evidence in the record upon which the district court made his determination, that show that upwards that the vast majority of people convicted who owe these LFOs are, in fact, indigent, determined to be indigent upon conviction and by public defender's offices, and are assigned a public defender, determined to be indigent by the courts and comptrollers, which is why they have a low expectation of resolution, or determined to be indigent by the counties when they look at the likelihood of getting these LFOs returned. Counsel, may I ask you another question before time runs out? If we were to find and affirm Judge Hinkle's ruling, how could we do the doctrine of constitutional avoidance and not find amendment four unconstitutional? Your Honor, I believe the question there is really one of remedy, but there's two methods by which this court could still hold and should still hold uphold the constitutionality of amendment four, even as it affirms the district court's decision. First of all, everyone agrees that nullifying amendment four would be an absurd result that should be avoided. Those are the words of the state itself in the hearing over the course of this case. How would we do that? Either as a constitutional avoidance matter or as the district court did in imposing questions of severability. How would we sever article six, section four, in order to make it constitutional? Severability is, in essence, really a judicial line item visa. There has to be some independent basis to be able to strike something out. In the case of Ray v. Mortham, in that case, the voters of the state of Florida wanted to do a citizen's initiative, and they wanted to impose term limits on state and federal officials. Once the U.S. Supreme Court said you could not impose term limits on federal officials, there was a challenge made to the constitutional amendment that the voters had passed. The Florida Supreme Court, in that case, held that severability was appropriate. One, because you could make independent judgments, and you could actually strike, i.e., red line, U.S. senator and U.S. changing the intent of the initiative. More importantly, the petition that the citizens had included with the amendment language had a severability provision. Is there a severability provision in this amendment? Your Honor, to answer your first question, this is not necessarily the classic instance of severability, because severability analysis is usually not undertaken when there's an unconstitutional application of a particular statute. It was not undertaken in Bearden. It was not undertaken in MLB. I'm not talking about the enabling statute. I'm talking about the constitutional provisions, because the enabling statute only exists because of amendment four. That's the only reason it exists. If we affirm Judge Hinkle, we have to find that, in fact, that is constitutional. How do we do that if we find that legal financial obligations are unconstitutional? Your Honor, in the three federal cases that I just cited, the primary undertaking of the court is to extend a benefit to the class discriminatorily included when their exclusion is found to be unconstitutional. To answer your question and sever a provision, which is explicitly included in the language of the amendment. Where would you, I guess my question would be, Anne Rae, they were able to strike out subparagraph five and subparagraph six. If you look at the actual language of article six, section four, which is amendment four, tell me where would you strike? What would you strike in order to make this constitutional? Your Honor, I don't think that that's the only way to perform severability analysis. In fact, it may lead to the absurd result that because- Wait, but you have to strike something because you're not, are you asking it to rewrite a constitutional provision? Not at all. What the district court did was enjoin an unconstitutional application. It would be- Well, if you enjoin an unconstitutional application, then it's voiced, unless you sever something. You can't have one or the other. The district court determined that it is not because the amendment four can still serve the primary purpose. How would it serve its purpose? Because you have to strike some language. If in essence, the only way to do it would be that that shall terminate and voting rights service court, period. There wouldn't be any completion of terms of sentence, including parole or probation. You'd have to strike that whole language. Your Honor, I think it would lead to an absurd result that to say because financial obligations are nowhere mentioned in the text of the amendment, in the ballot title of the amendment, in the summary of the amendment, that somehow voters were more wedded to one particular interpretation of this term that doesn't mention legal financial obligations, than they would be, for example- Ms. Epstein, before you finish up, can I turn your attention to the procedural due process question that we posed to counsel before our argument? It seems to me that if you're challenging legislative action, which is what the constitutional amendment and the implementing statute are, there's no way to challenge that as a violation of procedural due process. Your Honor, what we're challenging is the system set up by SB 7066, which fails to provide procedural due process to the plaintiffs and to others in the state of Florida. It's that implementation, which is dictated by the statute, that we think is severely deficient. In particular, the statute assigned to the Secretary of State and to supervisors of elections, the requirement that they determine eligibility or ineligibility, and the state has been staggeringly unable to define or- You're not challenging any particular adjudicative action. You're challenging a general law. What we're challenging is the failure to adequately provide adjudicative action. So, the general law sets up a scheme in which the Secretary of State and the supervisor of elections is tasked with making eligibility determinations, and they have been universally unable to make single ineligibility determination based on the statute. That's not a challenge to the process undertaken in passing the statute, but it's a challenge to the substantive system that this statute sets up, that it's not compliant with the requirements of due process. No matter what the legislature has set up, it has required, in essence, an adjudicatory process by someone to figure out whether a felon meets the eligibility requirements, right? Yes. In fact, it assigns it very specifically to the Secretary of State in the first instance, and then the supervisor of elections in combination. Those two bodies, the defendants in this case, have been both unable to define eligibility in a way that can be unable to make a single eligibility determination for any of the voters who have applied for registration so far. Ms. Ebenstein, your time has expired. Thank you. It's time for Mr. Cooper's rebuttal. He has 15 minutes. I don't have any questions, so you go ahead and start, and whenever Judge Wilson wants to jump in, he can jump in. Mr. Cooper, you're on mute. You're on mute. You need to start. Yes. Thank you, Mr. Chief Judge. Your Honor, I want to come right back to the 24th Amendment in your question about 7066, because I think there may be no better evidence that the legislature, at least, thinks costs and fees are penalties assessed in connection and integral part of a sentence than is 7066. It defines completion of all terms to mean within the four corners of the sentencing document itself, sentencing document, to include full payment of fines and fees ordered by the court as a part of the sentence. Your Honor, you pointed out that the court retains jurisdiction under 7066 to convert that part of the sentence to what? Community service. Is community service anything other than a penalty? And if those two are rule on whether amendment for itself requires the payment of these costs and fees before exercising the franchise, or was it the Supreme Court's advisory opinion limited to the Senate Bill 7066? Your Honor, I read that opinion not to be limited to 766, but to say that all terms of sentence means all, and that a term of the sentence, if the term, if the sentence includes a term, that is costs and fees, all means all. And, Your Honor, I don't think the Florida Supreme Court could have interpreted it any other way if it paid any attention at all to the text of the sentence. They understood that to mean financial terms and fines, costs, fees, no less than prison. So your argument, as I understand it, is that there's no way the voters of Florida would have passed amendment four if they had known they could permit fellows who cannot pay their outstanding fines and court fees and restitution. It would not have passed if they had known that. My question is, what do we do with Judge Hinkle's statement on page 109 of his order where he says, I find as a fact that voters would have approved amendment four by more than the 60 percent had they known it would be applied in the manner required by this order. Isn't that finding a fact reviewed for clear error? No, Your Honor. No, Your Honor. That's a legislative fact, Your Honor. And I would say not only is it not a fact so-called that the court has to defer to if not clearly erroneous, it is a legislative fact and it is palpably, I would submit to you, wrong. But wasn't there conflicting opinions by the experts? Dr. Donovan on one side and Dr. Barber on the other side? And Judge Hinkle credited Dr. Donovan over Dr. Barber and relied upon the factual record to support that conclusion? Your Honor, I think this goes to the colloquy we've previously heard about severability and whether or not, if Judge Hinkle's ruling is sustained, it would necessarily raise the question of whether or not the people of Florida would have adopted this amendment if it had said, Your Honor, if I can just suggest to you what the amendment four would have had to say, which is that the felon must complete all terms of sentence except that some felons, if they are unable to pay their fines, fees, and costs, do not have to pay them, but all other felons do. And secondly, no felon has to pay fees and costs. That would be a far different question put to the people of Florida to consider. And for the courts to decide that the people of Florida would have said yes to that and they would have been indifferent to those caveats, I think is really quite implausible, Your Honor. Thank you. I'm going to just go back to your blue brief again, briefly. And you say there, again, and I'm quoting, concerns about the precise amount of a felon's outstanding financial obligations simply do not end in a system in which the sole question for us is whether any amendment is made. And, you know, where does that come to view the people who have in the past been convicted of felonies? They'll just never be the same and they're not insured. Where does that come from? No. Where that comes, we have to understand the context of the point. The people that are before you under the wealth discrimination claim, as many of those people, you're on obligation. In other words, they know they can't pay them. And so how do they know what those are? No, but I'll come back to that. But my point is that if they know they are ineligible to register and vote, period. So it's a different thing altogether. With respect to your class, mind you, but who are the major concern of the plaintiffs, notwithstanding they're outside of the class, those who think they might have paid all their fines, but they're not sure. Two things. First, they register and vote if they in good faith think they've paid. And then as for the state, whether in boots, notice a hearing and ability to assess. That's the advisory opinion process. Because some requests for advisory opinion followed the template offered by Judge Hinkle when he rewrote the advisory opinion process. So they filled that and the state has investigated those questions and has provided answers and is continuing to do so. I want to come back to your point about what do we make of the number you gave the advisory before our state went into effect? Or are those responses by the state? In other words, the numbers that you alluded to in your initial argument are based in part on the discourse, which we stay on the state's own system based after the state was entered. By the state's system for the court's injunction below. And that system came back to life when this court, I don't know the respective numbers in terms of the applicants and which template they have attempted to follow. I have to say that somebody ultimately paid me, on their entitlement to notice of what they owe. Let's suppose it's a dollar. Are they entitled to notice? And the process to register again, and say eligibility in that post registration process, which implies that there's a common debt. Into that process. Well, if they have no idea, then this advisory opinion process, plus the individual's own investigation, presumably asking his lawyers and the public defenders, the court clerk himself or herself, and then the process will resolve that question. In the same place. So, the most fundamental question of all about the process issue, and I should have asked Mr. Smith or Ms. Ebenstein, this is genuinely confused whether we have a due process determination or judgment to review. I can't quite tell from the district court's order whether this is on the same thing, pining on a due process question that I can't quite tell was sort of vetted by the district court. Your Honor, we too, to be clearly said, uh, with respect to the remedy that I am framing for the, by the planners. Okay. Judge Grant? I mean, Judge Grant, do you have any questions? Judge Grant? No. You, about that reflecting, I believe, very persuasive evidence, the legislature believes these are two, I think, laws, as to become punishment. Well, this is imposed only on people who have been judged guilty. Is it the state's position that we scrap the whole thing? The state's position is that that conclusion that the amendment for could be rewritten uh, with those in Florida, which was outlined earlier in an apology by a former Florida Supreme Court judge. Okay. Okay. We apologize for the time available again, but if it didn't, we will certainly make sure that the video of this argument is posted. But, uh, we are.